# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**FEDERAL TRADE COMMISSION,**

                   **Plaintiff,**

-vs-                                **Case No.  6:12-cv-1588-Orl-28DAB**

**THE GREEN SAVERS, LLC,**
**CHRISTOPHER ADAMS, and VIKASH**
**JAWALAPERSAD,**

                   **Defendant.**

_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

       This cause came on for consideration without oral argument on the following motion filed herein:

---

| | |
|---|---|
| **MOTION:** | **AMENDED MOTION FOR DEFAULT JUDGMENT (Doc. No. 65)** |
| **FILED:** | **July 25, 2013** |

---

       **THEREON** it is **RECOMMENDED** that the motion be **GRANTED, in part**.

---

       As set forth in detail in the amended[1] motion, which has drawn no objection or response from any party, Plaintiff, the Federal Trade Commission ("the Commission" or "FTC"), seeks entry of a Default Judgment against Defendant Christopher Adams ("Adams"), "consisting of permanent injunctive relief, equitable monetary relief of $2,105,952, and other equitable relief tailored to prevent Adams's participation in future deceptive enterprises."  It is **respectfully recommended** that the motion be **granted, in part, in that judgment be entered, as set forth more fully below.**

---

       [1]The Court had issues with the original motion for default judgment (*see* Doc. 63), which the Commission has, in some measure, corrected here.

*Background*

According to the docket, the Commission filed its Complaint in this action, alleging that Adams and two other Defendants operated as a common enterprise to deceptively advertise, market, promote, offer for sale, and sell credit card interest rate reduction services to consumers nationwide in violation of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), and the FTC's Trade Regulation Rule entitled "Telemarketing Sales Rule", 16 C.F.R. Part 310. The Court entered an *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of a Receiver, Other Equitable Relief, Order to Show Cause Why a Preliminary Injunction Should Not Issue, and Order Temporarily Sealing File against Defendants on October 22, 2012, and appointed a Temporary Equity Receiver (Doc. 14.) Defendant Adams was personally served with the Complaint and the other relevant papers (Doc. 19), but did not file an answer or otherwise plead.

Adams failed to appear for the scheduled preliminary injunction hearing, and, on November 5, 2012, the Court entered a preliminary injunction against him (Doc. 27). On November 13, 2012, the FTC filed a First Amended Complaint for Permanent Injunction and Other Equitable Relief, adding two additional corporate defendants (Doc. 32). In response to this Court's prior Report, noting no indication that the Amended Complaint had been served on Adams (Doc. 63), the Commission filed a Certificate of Service, which certifies that the First Amended Complaint was served on Adams via U.S. Mail, on November 15, 2012 (Doc. 64). No response to the amended pleading was filed by Adams. The Commission applied to the Clerk of Court for entry of default as to Adams (Doc. 58), which the Clerk entered on May 22, 2013 (Doc. 59).

The Commission has settled the case with the other Defendants in this action, and the Court has entered a Stipulated Order for Permanent Injunction and Final Judgment as to The Green Savers, LLC, Pavac, Inc., Advanced Data Software, LLC, and Vikash Jawalapersad (Docs. 60, 61). The FTC now seeks entry of its Proposed Order for Permanent Injunction and Final Judgment as to Adams

(Doc. 65-1). In support of the motion, the Commission has filed a supporting Declaration and exhibits (Doc. 65-2) and has incorporated prior Declarations and evidence. Furthermore, the FTC relies on the Receiver's preliminary report to the Court (Doc. 24).

*Analysis*

The effect of the entry of a default is that all of the factual allegations in the Complaint are taken as true, save for the amount of unspecified damages. Thus, if liability is well-pled in the complaint, it is established by the entry of a default. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987). A court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). Importantly, however, a default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Federal Rule 54(c), Fed. R. Civ. P. (2013).

As set forth in great detail in the Amended Complaint, the well-pled allegations, admitted upon the default, establish that Adams, acting alone or in concert with others, violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), as well as various provisions of the FTC's regulations, 16 C.F.R. Part 310, while advertising, marketing, promoting, offering for sale, and selling credit card interest rate reduction services to consumers nationwide. The allegations, and supporting evidence, establish (1) that Adams participated directly in the wrongful practices or acts or that he had authority to control a corporation engaging in them, and (2) that Adams had some knowledge of the wrongful acts or practices. *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 470 (11th Cir. 1996); *FTC v. Amy Travel Serv.*, 875 F.2d 564, 573 (7th Cir. 1989). Despite receipt of the Amended Complaint and the instant motion, Adams has not filed anything to contest these well founded allegations. Liability is established.

As for the scope of the requested relief, the Eleventh Circuit has determined:

> Section 13(b) of the Federal Trade Commission Act authorizes the FTC to seek, and the district courts to grant, preliminary and permanent injunctions against practices that violate any of the laws enforced by the Commission.[footnote omitted] Although section 13(b) does not expressly authorize courts to grant monetary equitable relief, the FTC argues that the unqualified grant of statutory authority to issue an injunction under section 13(b) carries with it the full range of equitable remedies, including the power to grant consumer redress and compel disgorgement of profits. We agree with the FTC.

*GemMerch. Corp., supra,* 87 F.3d 466, 468.  Here, the Commission has tendered a proposed Default Judgment, which includes a variety of provisions, including injunctive relief and other monetary and equitable relief.

*Injunctive relief*

The proposed injunctive relief, set forth in sections I-VI, VIII and IX of the proposed Default Judgment, is necessary and appropriate here.  The Commission has cited numerous cases where permanent bans on similar activities were imposed.  *See,* Doc. 65, fn. 13.  Further, as noted by the FTC, the proposed Default Judgment's injunctive provisions "are essentially identical to the provisions already entered by the Court on June 13, 2013, in the FTC's settlement with the Corporate Defendants and Defendant Jawalapersad." While the June 13th Order was based on a settlement and this Order follows a default, based on the showing presented here and in the absence of any objection by Adams, the Court recommends the entry of the proposed injunctive relief, to include Sections I - VI, VIII and IX.

*Monetary relief*

In addition to injunctive relief, the Court has the equitable authority under the FTC Act, 15 U.S.C. §§ 41, *et seq.*, to order monetary relief. *See McGregor v. Chierico*, 206 F.3d 1378, 1388-89 (11th Cir. 2000);  *GemMerch.*, 87 F.3d at 469-70. The Eleventh Circuit has determined that the appropriate measure of such relief is a defendant's unjust enrichment or net revenue. *FTC v. Wash. Data Res.*, 704 F.3d 1323, 1326 (11th Cir. 2013).  The evidence presented shows that Defendants' net

revenue (and the consumer loss) during the time frame Adams was involved in the operation to be $2,105,952, which is based on an analysis of Defendants' known bank, tax, and other accounting records. *See* Doc. 65-2. The Court accepts this amount but cannot recommend that the Court adopt all of the remaining terms set forth in the Proposed Default Judgement.

Section VII, for example, provides not only that a judgment in this amount be entered and become "immediately due and payable" by Adams, but also includes the following provision:

> C. All payments under this Section shall be made by certified check or other guaranteed funds payable to and delivered to the Commission, or by wire transfer in accord with directions provided by counsel for the Commission.

(Doc. 65-1). The FTC wants not only a money judgment, but an Order that directs (and limits) Adams as to how he must satisfy that judgment.   The Commission cites no authority for this  provision, which the Court finds to be beyond the scope of appropriate relief.[2]

Moreover, the Proposed Default Judgment imposes certain affirmative duties and obligations on Adams that are not sought in the Amended Complaint. *See* "Order Acknowledgments"(Section X), "Compliance Reporting" (Section XI), "Recordkeeping" (Section XII), and "Compliance Monitoring" (XIII). As support for these provisions, the Commission notes only that: "[t]he proposed Default Judgment also contains reporting and monitoring provisions that are standard in FTC fraud cases and that aid the FTC in monitoring defendants' compliance with court orders" (Doc. 65 at 13). The Court finds this showing to be insufficient.  There is no discussion as to whether any of these

---

[2]The Proposed Default Judgment also includes the following provision, which the Court finds is within its auxiliary equitable powers and arguably within the prayer for relief set forth in the Amended Complaint:
D. All funds paid pursuant to this Order shall be deposited into a fund administered by the Commission or its agent to be used for equitable relief, including, but not limited to, consumer redress, and any attendant expenses for the administration of such equitable relief. If the Commission determines, in its sole discretion, that direct redress to consumers is wholly or partially impracticable or funds remain after redress is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendant Adams's practices alleged in the First Amended Complaint. Any funds not used for such equitable relief shall be deposited to the United States Treasury as disgorgement. Defendant Adams shall have no right to challenge the Commission's choice of remedies under this Section. Defendant Adams shall have no right to contest the manner of distribution chosen by the Commission. This judgment for equitable monetary relief is solely remedial in nature and is not a fine, penalty, punitive assessment, or forfeiture.

"standard" cases (none of which are specifically cited) address the propriety of imposing these conditions in the default context where, as here, they are not included in the prayer for relief.[3] While there may be a basis to include such provisions in this context, the Court cannot recommend it in the absence of any such showing here.[4]

It is therefore **respectfully recommended** that the motion be **granted, in part**, in that the Court find that entry of default judgment is appropriate, and such judgment should include the findings of fact and injunctive and monetary relief set forth in the Proposed Default Judgment, **but should not include** Section VII (C), Section X, Section XI, Section XII, and Section XIII, **unless Plaintiff provides the District Judge specific support to include the provisions**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on August 22, 2013.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

---

[3]While the Court included similar provisions in its June 13 Order, that was in the context of approving a settlement with appearing Defendants.

[4]In recommending denial of the original motion for default judgment, the undersigned sought clarification regarding other matters *and* "a more complete showing of the basis for entry of judgment." (Doc. 63). The instant showing does not meet that standard with respect to these provisions.