UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) Civ. No. 6-12-CV-1588-ORL-28-DAB |
| | ) |
| v. | ) |
| | ) |
| THE GREEN SAVERS, LLC, a Florida limited | ) |
| liability corporation, also d/b/a ELITE | ) |
| SERVICES and ADVANCED DATA | ) |
| SOLUTIONS, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

ORDER FOR PERMANENT INJUNCTION AND
FINAL JUDGMENT AS TO CHRISTOPHER ADAMS

Plaintiff Federal Trade Commission ("Commission" or "FTC") filed its First

Amended Complaint for a Permanent Injunction and Other Equitable Relief pursuant to

Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b)

and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act

("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to obtain temporary, preliminary, and

permanent injunctive relief, rescission or reformation of contracts, restitution, disgorgement

of ill-gotten gains, and other equitable relief for Defendants' acts or practices in violation of

Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of the FTC's Trade

Regulation Rule entitled "Telemarketing Sales Rule" ("TSR"), 16 C.F.R. Part 310.

The Court, having found all Defendant Christopher Adams in default, and the

Commission, having moved for entry of default judgment on all counts of the First Amended Complaint against Defendant Adams, **IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** as follows:

## FINDINGS

1.     This is an action by the Commission instituted under Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, the Telemarketing Act, 15 U.S.C. §§ 6101-6108, and the TSR, 16 C.F.R. Part 310.   Pursuant to these Sections of the FTC Act and the Telemarketing Act, the Commission has the authority to seek the relief contained herein.

2.     The First Amended Complaint states a claim upon which relief may be granted under Sections 5(a), 13(b), and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 53(b), and 57b, and Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b).

3.     This Court has jurisdiction over the subject matter of this case and personal jurisdiction over Defendant Adams.

4.     Venue in the United States District Court for the Middle District of Florida is proper pursuant to 15 U.S.C. § 53(b) and 28 U.S.C. § 1391(b) and (c).

5.     The activities of Defendant Adams is "in or affecting commerce" as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

6.     Defendant Adams was served with process in this matter.   He also was subsequently served with a copy of the FTC's First Amended Complaint under Federal Rule of Civil Procedure 5.   Defendant Adams thereafter failed to file an answer to the First Amended Complaint within the time set forth by Rule 12(a) of the Federal Rules of Civil

2

Procedure, or to otherwise defend this action. On May 22, 2013, the Clerk of Court entered orders of default as to Defendant Adams. The Commission now is entitled to a default judgment, pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, as to Defendant Adams.

7.     The factual allegations in the Commission's First Amended Complaint are taken as true against Defendant Adams. Those allegations and the evidence supporting them establish that Defendant Adams violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Trade Regulation Rule entitled "Telemarketing Sales Rule" ("TSR"), 16 C.F.R. Part 310.

8.     The Court now finds that, in connection with the advertising, marketing, promotion, offering for sale, or sale of credit card interest rate reduction services, Defendant Adams has violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by falsely representing, directly or indirectly, expressly or by implication, that (a) consumers who purchase Defendants' credit card interest rate reduction services will have their credit card interest rates reduced substantially; (b) consumers who purchase Defendants' credit card interest rate reduction services will save thousands of dollars in a short time as a result of lowered credit card interest rates; and (c) consumers who purchase Defendants' credit card interest rate reduction services will be able to pay off their debuts much faster, typically three to five times faster, as a result of lowered credit card interest rates.

9.     The Court further finds that, in the course of telemarketing goods and services, Defendant Adams has violated the TSR, 16 C.F.R. § 310.3(a)(2)(x), by

3

misrepresenting, directly or by implication, material aspects of debt relief services, including that (a) consumers who purchase Defendants' credit card interest rate reduction services will have their credit card interest rates reduced substantially; (b) consumers who purchase Defendants' credit card interest rate reduction services will save thousands of dollars in a short time as a result of lowered credit card interest rates; and (c) consumers who purchase Defendants' credit card interest rate reduction services will be able to pay off their debuts much faster, typically three to five times faster, as a result of lowered credit card interest rates.

10.     The Court further finds that, in the course of telemarketing goods and services, Defendant Adams has violated the TSR, 16 C.F.R. § 310.4(a)(5)(i), by having requested or received payment of a fee or consideration for a debt relief service before (a) Defendants had renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer; and (b) the customer has made at least one payment pursuant to that agreement.

11.     The Court further finds that, in the course of telemarketing goods and services, Defendant Adams has violated the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B), by engaging, or causing a telemarketer to engage, in initiating an outbound telephone call to a person's telephone number on the National Do Not Call Registry.

12.     The Court further finds that, in the course of telemarketing goods and services, Defendant Adams has violated the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(A), by

4

engaging, or causing a telemarketer to engage, in initiating an outbound telephone call to a person who previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of Defendants.

13.     The Court further finds that, in the course of telemarketing goods and services, Defendant Adams has violated the TSR, 16 C.F.R. § 310.4(a)(8), by failing to transmit, or causing to be transmitted, the telephone number and name of the telemarketer or of Defendants to any caller identification service in use by a recipient of a telemarketing call.

14.     The Court further finds that, in the course of telemarketing goods and services, Defendant Adams has violated the TSR, 16 C.F.R. § 310.4(b)(1)(v), by making, or causing others to make, outbound telephone calls that delivered prerecorded messages to induce the purchase of goods or services.

15.     The Court further finds that, in the course of telemarketing goods and services, Defendant Adams has violated the TSR, 16 C.F.R. §§ 310.4(b)(1)(v)(B)(ii) and (d), by making, or causing others to make, outbound telephone calls that deliver a prerecorded message in which the telemarketer or message failed to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call: a) the identity of the seller; b) that the purpose of the call is to sell goods or services; and c) the nature of the goods or services.

16.     Defendant Adams is likely to continue to engage in the acts and practices alleged in the First Amended Complaint unless he is permanently enjoined from such acts and practices.

5

17.     Defendants' net sales (total sales minus refunds, returns, and chargebacks) amounted to three million eight hundred seventy nine thousand one hundred and fourteen dollars ($3,879,114) from the conduct alleged in the Commission's First Amended Complaint. (*See* Doc. 61 at pp. 12-13.) During the time frame Defendant Adams was involved in the conduct alleged in the Commission's First Amended Complaint, Defendants' net sales amounted to two million one hundred five thousand nine hundred fifty-two dollars ($2,105,952). *See FTC v. Gem Merch. Corp.*, 87 F.3d 466, 470 (11th Cir. 1996); *FTC v. Global Mktg. Grp.*, 594 F. Supp. 2d 1281, 1290 (M.D. Fla. Dec. 24, 2008) (the appropriate measure of consumer damages is the total loss suffered at the hands of defendants).

18.     The Commission is therefore entitled to equitable monetary relief against Defendant Adams, jointly and severally with the other Defendants, in the amount of two million one hundred five thousand nine hundred fifty-two dollars ($2,105,952).

19.     This Order is in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law.

20.     Entry of this Order is in the public interest.

21.     Pursuant to Federal Rule of Civil Procedure 65(d), the provisions of this Order are binding upon Defendant Adams, his officers, agents, servants, employees, attorneys, corporations, successors and assigns, and upon those person or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise.

6

## DEFINITIONS

For purposes of this Order, the following definitions shall apply:

1.      "**Asset**" or "**Assets**" means any legal or equitable interest in, right to, or claim to, any real or personal property, including, but not limited to, "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," or "notes," (as these terms are defined in the Uniform Commercial Code), lines of credit, chattels, leaseholds, contracts, mail or other deliveries, shares of stock, lists of consumer names, accounts, credits, premises, receivables, funds, and all cash, wherever located.

2.      "**Assisting others**" includes, but is not limited to:

A.      performing customer service functions, including, but not limited to, receiving or responding to consumer complaints;

B.      formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including, but not limited to, any telephone sales script, direct mail solicitation, or the design, text, or use of images of any Internet website, email, or other electronic communication;

C.      formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including but not limited to, web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

D.      providing names of, or assisting in the generation of, potential customers:

7

E.      performing marketing, billing, or payment services of any kind; and

F.      acting or serving as an owner, officer, director, manager, or principal of any entity.

3.      **"Corporate Defendants"** means The Green Savers, LLC, also doing business as Elite Services and Advanced Data Solutions; Pavac, Inc., also doing business as The Green Savers, LLC, Advanced Data Software, LLC, Advanced Data Solutions, and Elite Services; and Advanced Data Software, LLC, also doing business as The Green Savers, LLC and Advanced Data Solutions; and their successors and assigns, as well as any subsidiaries, and any fictitious business entities or business names created or used by these entities, or any of them, including but not limited to Zenergy Telecom, LLC.

4.      **"Debt relief product or service"** means any product, service, plan or program represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector.

5.      **"Defendants"** means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

6.      **"Document"** or **"Documents"** means any materials listed in Federal Rule of Civil Procedure 34(a) and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, into reasonably usable form through detection

8

devices. A draft or nonidentical copy is a separate Document within the meaning of the term.

7.      **"Financial Institution"** means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

8.      **"Financial related product or service"** means any product or service represented, directly or by implication, to:

A.      provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, credit, debit, or stored value cards;

B.      improve, or arrange to improve, any consumer's credit record, credit history, or credit rating;

C.      provide advice or assistance to any consumer with regard to any activity or service the purpose of which is to improve a consumer's credit record, credit history, or credit rating;

D.      provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, a loan or other extension of credit;

E.      provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving any service represented, expressly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a consumer and one or more secured creditors, servicers, or debt collectors.

9.      **"Individual Defendants"** means Vikash Jawalapersad and Christopher Adams, and by whatever other names each may be known.

10.      **"Person"** means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

11.      **"Plaintiff"** means the Federal Trade Commission ("Commission" or "FTC").

12.      **"Telemarketing"** means any plan, program, or campaign which is conducted to induce the purchase of goods or services, or a charitable contribution, by use of one or more telephones, and which involves a telephone call, whether or not covered by the Telemarketing Sales Rule.

I.

## PERMANENT BAN ON ROBOCALLS

**IT IS THEREFORE ORDERED** that Defendant Adams, whether acting directly or through any person, trust, corporation, partnership, limited liability company, subsidiary, division, or other device, is permanently restrained and enjoined from initiating, or causing others to initiate, any telephone call that delivers a prerecorded message.

II.

## PERMANENT BAN ON TELEMARKETING

**IT IS FURTHER ORDERED** that Defendant Adams, whether acting directly or through any person, trust, corporation, partnership, limited liability company, subsidiary, division, or other device, is permanently restrained and enjoined from participating in

telemarketing, or assisting others engaged in telemarketing.

## III.

## PERMANENT BAN ON MARKETING DEBT RELIEF PRODUCTS OR SERVICES

**IT IS FURTHER ORDERED** that Defendant Adams, whether acting directly or

through any person, trust, corporation, partnership, limited liability company, subsidiary,

division, or other device, is permanently restrained and enjoined from engaging in,

participating in, or assisting others in the advertising, marketing, promotion, offering for sale,

sale, or distribution of any debt relief product or service.

## IV.

## PROHIBITED PRACTICES RELATING TO
## FINANCIAL RELATED PRODUCTS OR SERVICES

**IT IS FURTHER ORDERED** that Defendant Adams, and his officers, agents,

servants, employees, attorneys, and all other persons in active concert or participation with

any of them, who receive actual notice of this Order by personal service or otherwise,

whether acting directly or through any trust, corporation, partnership, limited liability

company, subsidiary, division, or other device, in connection with the advertising, marketing,

promotion, offering for sale, or sale of any financial related product or service, are

permanently restrained and enjoined from:

A.      Misrepresenting or assisting others in misrepresenting, expressly or by

implication, any material fact, including but not limited to:

1.      The terms or rates that are available for any loan or other extension of

11

credit, including but not limited to:

a.    closing costs or other fees;

b.    the payment schedule, the monthly payment amount(s), or other payment terms, or whether there is a balloon payment; interest rate(s), annual percentage rate(s), or finance charge; the loan amount, the amount of credit, the draw amount, or outstanding balance; the loan term, the draw period, or maturity; or any other term of credit;

c.    the savings associated with the credit;

d.    the amount of cash to be disbursed to the borrower out of the proceeds, or the amount of cash to be disbursed on behalf of the borrower to any third party;

e.    whether the payment of the minimum amount specified each month covers both interest and principal, and whether the credit has or can result in negative amortization;

f.    that the credit does not have a prepayment penalty or that no prepayment penalty and/or other fees or costs will be incurred if the consumer subsequently refinances; and

g.    that the interest rate(s) or annual percentage rate(s) are fixed rather than adjustable or adjustable rather than fixed;

2.    That any person can improve any consumer's credit record, credit

history, or credit rating by permanently removing negative information from the consumer's credit record, credit history, or credit rating, even where such information is accurate and not obsolete;

3. Any person's ability to improve or otherwise affect a consumer's credit record, credit history, credit rating, or ability to obtain credit;

4. Any aspect of any mortgage loan modification service or foreclosure relief service, including, but not limited to, the amount of savings or reduction in interest rate, loan principal, or monthly payment that a consumer will receive from purchasing, using, or enrolling in such mortgage loan modification service or foreclosure relief service; the amount of time before a consumer will receive a mortgage loan modification or relief from foreclosure; the likelihood that a consumer will obtain a modified mortgage loan or relief from foreclosure; or the reduction or cessation of collection calls; and

5. That a consumer will receive legal representation; and

B. Advertising or assisting others in advertising credit terms other than those terms that actually are or will be arranged or offered by a creditor or lender.

13

V.

## PROHIBITED PRACTICES RELATING TO
## ANY PRODUCTS OR SERVICES

**IT IS FURTHER ORDERED** that Defendant Adams, and his officers, agents,

servants, employees, attorneys, and all other persons in active concert or participation with

any of them, who receive actual notice of this Order by personal service or otherwise,

whether acting directly or through any trust, corporation, partnership, limited liability

company, subsidiary, division, or other device, in connection with the advertising, marketing,

promotion, offering for sale or sale of any product or service, are permanently restrained and

enjoined from misrepresenting or assisting others in misrepresenting, expressly or by

implication, any material fact, including but not limited to:

    A.    Any material aspect of the nature or terms of any refund, cancellation,

exchange, or repurchase policy, including, but not limited to, the likelihood of

a consumer obtaining a full or partial refund, or the circumstances in which a

full or partial refund will be granted to the consumer;

    B.    That any person is affiliated with, endorsed or approved by, or otherwise

connected to any other person, government entity, or public, non-profit, or

other non-commercial program, or any other program;

    C.    The total costs to purchase, receive, or use, or the quantity of, the product, or

service;

    D.    Any material restriction, limitation, or condition on purchasing, receiving, or

14

using the product or service; and

E.    Any material aspect of the performance, efficacy, nature, or characteristics of
the product or service.

## VI.

## SUBSTANTIATION FOR BENEFIT, PERFORMANCE, AND EFFICACY CLAIMS

**IT IS FURTHER ORDERED** that Defendant Adams, and his officers, agents,

servants, employees, attorneys, and all other persons in active concert or participation with

any of them, who receive actual notice of this Order by personal service or otherwise,

whether acting directly or through any trust, corporation, partnership, limited liability

company, subsidiary, division, or other device, in connection with the advertising, marketing,

promotion, offering for sale or sale of any product or service, are permanently restrained and

enjoined from making any representation or assisting others in making any representation,

expressly or by implication, about the benefits, performance, or efficacy of any product or

service, unless, at the time such representation is made, Defendant Adams possesses and

relies upon competent and reliable evidence that substantiates that the representation is true.

## VII.

## MONETARY JUDGMENT

**IT IS FURTHER ORDERED** that:

A.    Judgment is hereby entered in favor of the Commission and against Defendant

Adams, jointly and severally with Corporate Defendants and Defendant Jawalapersad, for

equitable monetary relief, including, but not limited to, consumer redress, in the amount of

15

Two Million One Hundred Five Thousand Nine Hundred Fifty-Two Dollars ($2,105,952), as equitable relief for consumer injury during the relevant time period;

B. Upon entry of this Order, this monetary judgment shall become immediately due and payable by Defendant Adams, and interest, computed pursuant to 28 U.S.C. § 1961(a), as amended, immediately shall begin to accrue upon the unpaid balance.

C. All payments under this Section shall be made by certified check or other guaranteed funds payable to and delivered to the Commission, or by wire transfer in accord with directions provided by counsel for the Commission.

D. All funds paid pursuant to this Order shall be deposited into a fund administered by the Commission or its agent to be used for equitable relief, including, but not limited to, consumer redress, and any attendant expenses for the administration of such equitable relief. If the Commission determines, in its sole discretion, that direct redress to consumers is wholly or partially impracticable or funds remain after redress is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendant Adams's practices alleged in the First Amended Complaint. Any funds not used for such equitable relief shall be deposited to the United States Treasury as disgorgement. Defendant Adams shall have no right to challenge the Commission's choice of remedies under this Section. Defendant Adams shall have no right to contest the manner of distribution chosen by the Commission. This judgment for equitable monetary relief is solely remedial in nature and is not a fine, penalty, punitive assessment, or forfeiture.

16

## VIII.

## PROHIBITIONS REGARDING CONSUMER INFORMATION

**IT IS FURTHER ORDERED** that Defendant Adams, and his officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, are permanently restrained and enjoined from:

A.      Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), of any person which Defendant Adams obtained prior to entry of this Order in connection with the marketing or sale of any debt relief product or service; and

B.      Failing to dispose of such customer information in all forms in his possession, custody, or control within thirty (30) days after entry of this Order.   Disposal shall be by means that protect against unauthorized access to the customer information, such as by burning, pulverizing, or shredding any papers, and by erasing or destroying any electronic media, to ensure that the customer information cannot practicably be read or reconstructed.

*Provided, however,* that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by a law, regulation, or court order.

17

## IX.

## PROHIBITION ON COLLECTING ON ACCOUNTS

**IT IS FURTHER ORDERED** that Defendant Adams, and his officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly, or through any trust, corporation, partnership, limited liability company, subsidiary, division, or other device, are permanently restrained and enjoined from attempting to collect, collecting, or assigning any right to collect payment from any consumer who purchased or agreed to purchase any debt relief product or service from Defendant Adams.

## X.

## ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendant Adams obtain acknowledgments of receipt of this Order:

A.     Defendant Adams, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.     For 5 years after entry of this Order, Defendant Adams for any business that he, individually or collectively with any other Defendant, is the majority owner or directly or indirectly controls must deliver a copy of this Order to: (1) all principals, officers, directors, and managers; (2) all employees, agents, and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any

18

change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. To all others, delivery must occur before they assume their responsibilities.

C.    From each individual or entity to which Defendant Adams delivered a copy of this Order, Defendant Adams must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XI.

## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendant Adams make timely submissions to the Commission:

A.    One (1) year after entry of this Order, Defendant Adams must submit a compliance report, sworn under penalty of perjury. Defendant Adams must: (1) identify all telephone numbers and all email, Internet, physical, and postal addresses, including all residences; (2) identify all titles and roles in all business activities, including any business for which Defendant Adams performs services whether as an employee or otherwise and any entity in which Defendant Adams has any ownership interest; (3) describe in detail Defendant Adams's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership; (4) designate at least one telephone number and an email, physical, and postal address as points of contact, which representatives of the Commission may use to communicate with Defendant Adams; (5) identify all of Defendant Adams's businesses by all of their names, telephone numbers, and physical,

19

postal, email, and Internet addresses; (6) describe the activities of each business, including the products and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Defendant Adams must describe if he knows or should know due to his own involvement); (7) describe in detail whether and how Defendant Adams is in compliance with each Section of this Order; and (8) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B.      For twenty (20) years following entry of this Order, Defendant Adams must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following: (1) name, including aliases or fictitious name, or residence address; (2) title or role in any business activity, including any business for which Defendant Adams performs services whether as an employee or otherwise and any entity in which Defendant Adams has any ownership interest, and identify its name, physical address, and Internet address, if any; (3) any designated point of contact; or (4) the structure of any Corporate Defendant or any entity that Defendant Adams has any ownership interest in or directly or indirectly controls that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C.      Defendant Adams must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or any similar proceeding by or against him within 14 days of its filing.

20

D.     Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on:_____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: *FTC v. The Green Savers, LLC, et al.* (X130002).

## XII.

## RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendant Adams must create certain records for 20 years after entry of the Order, and retain each such record for 5 years. Specifically, Defendant Adams, for any business in which he, individually or collectively with any other Defendant, is a majority owner or directly or indirectly controls, must maintain the following records:

A.     Accounting records showing the revenues from all goods or services sold, all costs incurred in generating those revenues, and the resulting net profit or loss;

B.     Personnel records showing, for each person providing services, whether as an

employee or otherwise, that person's:   name, addresses, and telephone numbers; job title or

position; dates of service; and, if applicable, the reason for termination;

      C.     Complaints and refund requests, whether received directly or indirectly, such

as through a third party, and any response;

      D.     All records necessary to demonstrate full compliance with each provision of

this Order, including all submissions to the Commission; and

      E.     A copy of each advertisement or other marketing material.

## XIII.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendant

Adams's compliance with this Order, including the financial representations upon which part

of the judgment was suspended:

      A.     Within 14 days of receipt of a written request from a representative of the

Commission, Defendant Adams must: submit additional compliance reports or other

requested information, which must be sworn under penalty of perjury; appear for depositions;

and produce documents, for inspection and copying. The Commission is also authorized to

obtain discovery, without further leave of court, using any of the procedures prescribed by

Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36,

45, and 69.

      B.     For matters concerning this Order, the Commission is authorized to

communicate directly with Defendant Adams.  Defendant Adams must permit

representatives of the Commission to interview any employee or other person affiliated with Defendant Adams who has agreed to such an interview. The person interviewed may have counsel present.

C. The Commission may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendant Adams or any individual or entity affiliated with Defendant Adams, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XIV.

### LIFTING OF ASSET FREEZE

**IT IS FURTHER ORDERED** that the freeze on the assets of Defendant Adams shall remain in effect until the Commission has received the total amount required by Section III above, *provided, however*, that Defendant Adams may transfer funds to the extent necessary to make all payments required by Section VII. Upon payment to the Commission of the total amount required by Section VII above, the freeze against the assets of Defendant Adams shall be lifted permanently.

## XV.

### SEVERABILITY

**IT IS FURTHER ORDERED** that the provisions of this Order are separate and severable from one another. If any provision is stayed or determined to be invalid, the remaining provisions shall remain in full force and effect.

## XVI.

### JURISDICTION

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter

for purposes of construction, modification, and enforcement of this Order.


SO ORDERED, this _25_ day of _September_, 2013.

The Honorable John Antoon, II
Middle District of Florida

24